**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-145-DLB**

**ALEXANDER CASTANEDA-CASTANO**                                   **PETITIONER**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**JAMES A. DALEY, et al.,**                                       **RESPONDENTS**

\* \* \* \* \* \* \* \* \* \*

## I.    INTRODUCTION

This matter is before the Court on Petitioner Alexander Castaneda-Castano's

Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents filed their Responses[1] (Docs.

# 5 and 8).  Petitioner filed a Reply (Doc. # 7) to the Federal Respondents' Response

(Doc. # 5) but did not reply to Respondent Daley's Response (Doc. # 8) and the time for

doing so has passed.  Accordingly, this matter is now ripe for review.  For the following

reasons, the Court will **grant** the Petition.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This matter comes in the wake of the Court's Order in *Castaneda-Castano v.*

*Olson*, No. 2:26-cv-34-DLB, 2026 WL 622863 (E.D. Ky. Mar. 5, 2026).  For brevity's sake,

the Court incorporates the factual summary laid out therein.  *Id.* at \*1.  In that Order, the

Court held that ICE had detained Castaneda-Castano under 8 U.S.C. § 1226 and that his

---

[1]      Petitioner files this action against Samuel Olson, former Acting Field Office Director, Chicago Field Office, Immigration and Customs Enforcement ("ICE"), Pamela Bondi, former Attorney General of the United States (collectively the "Federal Respondents), and James Daley, Jailer, Campbell County Detention Center.  (Doc. # 1).

detention without a bond hearing violated his right to due process under the Fifth Amendment. *Id.* at *9-10. Accordingly, on March 5, 2026, the Court granted Castaneda-Castano's petition for a writ of habeas corpus and ordered Respondents to immediately release Castaneda-Castano or, in the alternative, provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at *10.

The same day that this Court entered its Order granting Castaneda-Castano's Petition, an immigration judge ("IJ") held a bond hearing in Castaneda-Castano's removal proceedings. (Doc. # 1 ¶ 2). Unaware of this Court's Order, the IJ determined that it had jurisdiction to adjudicate Castaneda-Castano's bond request pursuant to the decision in *Maldonado Bautista v. Santacruz*, No. 25-cv-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). (*Id.* ¶ 18). At the bond hearing, Castaneda-Castano argued that he was neither a danger to the community nor a flight risk. (*Id.* ¶ 19). He submitted documentary evidence in support of these claims. (*Id.* ¶ 21). The Department of Homeland Security ("DHS"), on the other hand, argued that Castaneda-Castano did pose a flight risk. (*Id.* ¶ 20). However, DHS did not submit any evidence to bolster this assertion. (*Id.* ¶ 21). After considering the parties' arguments, the IJ denied bond solely because Castaneda-Castano failed to establish that he is not a flight risk. (*Id.* ¶ 22; *see also* Doc. # 1-1 at 1). Castaneda-Castano remains in ICE detention at Campbell County Detention Center. (*Id.* ¶ 11).

On April 1, 2026 Castaneda-Castano filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (*Id.*). In his Petition, Castaneda-Castano requests that the Court order his immediate release or, alternatively provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a), at which the government bears the burden of

proving by clear and convincing evidence that Castaneda-Castano is a flight risk. (*Id.* ¶ 31). Although the Petition was originally assigned to Judge Meredith, this matter was reassigned to the undersigned Judge as a related case on April 2, 2026. (Doc. # 3). The Court directed Respondents to respond to the Petition on April 2, 2026. (Doc. # 4). The Federal Respondents filed a Response on April 5, 2026 (Doc. # 5), and Castaneda-Castano filed his Reply on April 15, 2026 (Doc. # 7). Respondent Daley filed his Response on April 17, 2026 (Doc. # 8), to which Castaneda-Castano did not reply. Thus, the matter is ripe for the Court's review.

## III.    ANALYSIS

Castaneda-Castano acknowledges that he received a bond hearing. (Doc. # 1 ¶ 18). However, he contends that this bond hearing was constitutionally deficient and, as a result, his continued detention violates his Fifth Amendment right to due process. (*Id.* ¶¶ 32-35). Respondents offer three arguments in rebuttal. First, Respondents assert that 8 U.S.C. § 1226(e) divests this Court of jurisdiction to review the IJ's decision denying bond. (Doc. # 5 at 5). Second, Respondent Daley claims that this Court should require Castaneda-Castano to exhaust his administrative remedies prior to seeking habeas relief. (Doc. # 8 at 3). Finally, Respondents contend that even if the Court has jurisdiction to hear Petitioner's claims, the Petition should be denied because Castaneda-Castano has already received a bond hearing that comports with the strictures of due process. (*Id.* at 2).

### A.    8 U.S.C. § 1226(e)

Jurisdiction poses a threshold question. *See Florida v. Thomas*, 532 U.S. 774, 777 (2001) ("we must first consider whether we have jurisdiction to decide this case")

(citation omitted). And "'[f]ederal courts,' it bears repeating, 'are courts of limited jurisdiction.'" *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, "[w]ithin constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007).

In the context of an IJ's decision to grant or deny bond under 8 U.S.C. § 1226, this Court's jurisdiction is circumscribed by § 1226(e). That statute provides that

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Accordingly, "district courts do not have jurisdiction to review discretionary decisions made by an IJ regarding bond." *Fuentes v. Lyons*, No. 5:25-cv-153, 2025 WL 3022478, at *3 (S.D. Tx. Oct. 29, 2025) (citing *Nielsen v. Preap*, 586 U.S. 392, 401 (2019)). However, the Supreme Court has emphasized that "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases. It does not block lawsuits over 'the extent of the Government's detention authority under the 'statutory framework' as a whole.'" *Nielsen*, 586 U.S. at 401 (quoting *Jennings v. Rodriguez*, 583 U.S. 295-96 (2018)). So, where a petitioner challenges a particular discretionary "action" taken by an IJ—as opposed to the statutory framework as a whole— § 1226(e) precludes the federal courts' review. *Jennings*, 583 U.S. at 296; *see also Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 279 (3d Cir. 2018) ("Because [the petitioner] does not challenge a particular action or decision, but rather 'the statutory framework that permits his detention without bail,' § 1226(e) does not deprive the District

4

Court or this Court of jurisdiction[.]" (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003) (cleaned up)).  Thus, the Court may only consider Castaneda-Castano's Petition insofar as it challenges the extent of the Government's detention authority under the relevant statutory framework.  *Nielsen*, 586 U.S. at 401.

Castaneda-Castano asserts that his Petition "does not challenge a 'discretionary action' by the Attorney General, but rather that the discretionary process itself was unconstitutional."  (Doc. # 7 at 1-2 (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003)).  Thus, he claims that § 1226(e) does not preclude this Court's consideration of his Petition.  (*Id.*).  The Court agrees.  The crux of Castaneda-Castano's argument is that the IJ unconstitutionally placed the burden of proof on Petitioner instead of the government.  (Doc. # 1 ¶ 2).  Castaneda-Castano contends that requiring him to prove that he was not a flight risk violated his right to due process under the Fifth Amendment.  (*Id.* ¶ 35).  Respondents object that, by raising this argument, Castaneda-Castano asks "this Court to relitigate the findings of the Immigration Court in an effort to achieve a different conclusion[.]"  (Doc. # 5 at 6).  And such second-guessing, Respondents continue, is proscribed by 8 U.S.C. § 1226(e).  (*Id.*).

In support of their argument, Respondents point to this Court's decision in *Guiracocha v. Noem*.  No. 2:26-cv-62-DLB, 2026 WL 622860 (E.D. Ky. Mar. 5, 2026).  In that case, an ICE detainee challenged an IJ's decision to deny bond on the basis that the petitioner was a flight risk and posed a danger to the community.  *Id.* at *3.  Specifically, the *Guiracocha* petitioner argued that the IJ's decision improperly weighed the evidence in reaching this conclusion.  *Id.* at *4 (noting that the petitioner "argues that the IJ erred in weighing the evidence").  Thus, the petitioner raised "quintessentially factual arguments

5

about the IJ's decision" which fell "outside the bounds of the Court's jurisdiction." *Id.* Because the *Guiracocha* petitioner challenged a discretionary application of § 1226(a), the Court denied his petition for lack of jurisdiction. *Id.* at *5.

Unlike the *Guiracocha* petitioner, Castaneda-Castano explicitly raises a constitutional claim regarding the procedure of his bond hearing. Such a claim differs in kind from assertions that an IJ reached an erroneous conclusion after considering the facts or that an IJ failed to give appropriate weight to a certain factor. *See Marroquin v. Noem*, No. 2:26-cv-45-DLB, 2026 WL 575222, at *4 (E.D. Ky. Mar. 5, 2026); *Miranda v. Garland*, 34 F.4th 388, 352 (4th Cir. 2022) ("And while the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a) may very well be discretionary, a constitutional challenge to its categorical, across-the-board nature, as opposed to the application of § 1226 to specific cases, is beyond the scope of § 1226(e)."); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Whether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review.") (quoting *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)). Because Castaneda-Castano argues that he was forced to bear the burden of proving that he did not pose a flight risk and that this requirement did not comport with due process, he has raised a constitutional claim which this Court has jurisdiction to review.

**B.   Exhaustion**

Respondent Daley argues that the Petition must be denied because Castaneda-Castano failed to exhaust his administrative remedies.[2] (Doc. # 8 at 3). Daley notes that

---

[2]   Daley also argues that he is not a proper respondent to the Petition. (Doc. # 8 at 5). However, "the federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). The Supreme Court has held that "[w]henever

Castaneda-Castano reserved the right to appeal the IJ's decision and argues that he must proceed through the Board of Immigration Appeals' ("BIA") appellate process prior to seeking habeas relief in federal court. (*Id.* at 4).

The exhaustion doctrine serves an important purpose. It allows agencies to exercise their "'special expertise in interpreting relevant statutes' and promotes judicial efficiency." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987)); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 418 (2023) (noting that "exhaustion promotes efficiency, including by encouraging parties to resolve their disputes without litigation") (citations omitted). Exhaustion requirements generally come in three kinds. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019). First, statutory text can impose an exhaustion requirement. *Id.* (citing *Sims v. Apfel*, 530 U.S. 103, 107 (2000)). Second, a given statute may permit an administrative agency to adopt regulations imposing an exhaustion requirement. *Id.* at 747. Finally, where "neither statute nor regulation says anything about exhaustion," a court may nonetheless impose an implied, or "prudential"

---

a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Castaneda-Castano] is being detained,' [Daley] is [Castaneda-Castano's] custodian." *Id.* (quoting *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)).

Castaneda-Castano is presently detained at the Campbell County Detention Center. (Doc. # 1 ¶ 11; Doc. # 8 at 2). Daley, as the elected Jailer, "oversee[s] and operate[s]" the Campbell County Detention Center. (Doc. # 6 at 1). Therefore, Daley is a proper respondent to Castaneda-Castano's Petition. *See Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at *1. Accordingly, the Court will deny Castaneda-Castano's request to dismiss him as a respondent.

7

exhaustion requirement in harmony with the statutory scheme. *Id.* (citing *Sims*, 530 U.S. at 108-110).

Where, as here, a petitioner raises a constitutional due process challenge in connection with a bond hearing under § 1226, "there is no applicable statute or rule that mandates administrative exhaustion[.]" *Soto-Medina v. Lynch*, No. 1:25-cv-1704, 2026 WL 161002, at *3 (W.D. Mich. Jan. 21, 2026); *see also Bartolon v. Bondi*, 813 F. Supp. 3d 811, 823 (S.D. Ohio 2025) (noting that no statute or regulation requires administrative exhaustion where an ICE detainee objects to a bond denial under § 1226). So, if Castaneda-Castano must exhaust his remedies before bringing the claims in his Petition, it is due to the applicability of prudential exhaustion. However, "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (collecting cases). Although the Sixth Circuit has yet to prescribe a standard for determining whether prudential exhaustion applies to a given case, courts within this Circuit have followed the test established by the Ninth Circuit.[3] *See, e.g., Bartolon*, 813 F. Supp. 3d at 824; *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. Aug. 29, 2025); *Orellana v. Noem*, 807 F. Supp. 3d 745, 749 (W.D. Ky. 2025). Under the Ninth Circuit's test, a court may require prudential exhaustion when:

> (1)     Agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

---

[3]     The Sixth Circuit has previously cited the Ninth Circuit's test in the context of challenges to bond determinations made by IJs. *Bartolon*, 813 F. Supp. 3d at 824 (citing *Rabi v. Sessions*, No. 18-3249, U.S. App. LEXIS 19661, at *1 (6th Cir. July 16, 2018) (citation omitted)). However, this reference came in a brief, unpublished order.

(2)     Relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3)     Administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Soto-Medina*, 2026 WL 161002, at *3 (quoting *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citations omitted)).

This test counsels against the imposition of a prudential exhaustion requirement in Castaneda-Castano's case.  None of the three factors suggest that requiring Castaneda-Castano to proceed through the BIA's administrative review framework would protect the BIA's authority or promote judicial efficiency.  *See McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.").  Regarding the first factor, Castaneda-Castano asserts a quintessentially constitutional claim.  (Doc. # 1 ¶ 35).  He argues that Respondents violated his right to due process by requiring him to bear the burden of proof at his bond hearing.  (*Id.*).  Resolving this claim poses a question of constitutional interpretation that does not require a developed record from the BIA.  *See Soto-Medina*, 2026 WL 161002, at *3.  Second, due process challenges emanating from immigration proceedings "generally do[] not require exhaustion" because "the BIA lacks authority to review constitutional challenges[.]"  *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).  Nonetheless, Daley argues that "this Court's interference may encourage additional petitioners to bypass the administrative scheme of the immigration court in favor of what may be perceived as a potentially more favorable and/or timely reviewing body[.]"  (Doc. # 8 at 4).  The Court disagrees.  Because the BIA lacks authority to review constitutional challenges, declining to require exhaustion in this case would not

encourage individuals with constitutional claims to bypass the BIA's administrative process. *See Lopez-Campos*, 797 F. Supp. 3d at 778 (declining to require prudential exhaustion). The third and final factor falls in Castaneda-Castano's favor for similar reasons. Because the BIA lacks the authority to address constitutional challenges, administrative review will not resolve Castaneda-Castano's claims and avoid the need for judicial review. *Singh*, 2026 WL 962003, at *3 (finding that prudential exhaustion was inappropriate because "the BIA cannot review []constitutional challenges") (citing *Sterkaj*, 439 F.3d at 279).

Under the test consistently applied by courts in the Sixth Circuit, prudential exhaustion is inappropriate in this case. Thus, the Court declines Daley's invitation and turns to Castaneda-Castano's substantive argument.

### C.    Due Process

Having concluded that it has jurisdiction to review the Petition and having declined to impose an exhaustion requirement, the Court now turns to Castaneda-Castano's arguments concerning his right to due process under the Fifth Amendment. In his Petition, Castaneda-Castano argues that "[p]lacing the burden of proof on the Petitioner to establish whether he is a flight risk or danger to others violated his right to due process." (Doc. # 1 ¶ 35).

It is undisputed that "[s]ection 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021) (citing 8 U.S.C. § 1226(a)). Following the 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), a noncitizen seeking release bore the burden of "demonstrat[ing] to the satisfaction of the officer that such

10

release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). It is important to note, however, that this regulation applied *only* to the custody determination by the arresting officer. Nevertheless, the BIA soon adopted that standard and applied it to 1226(a), requiring a noncitizen detained pursuant to § 1226(a) to demonstrate "to the satisfaction of the immigration judge that he or she merits release on bond." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *see also Matter of Fatahi*, 26 I. & N. 791, 795 n. 3 (B.I.A. 2016) (stating that the BIA has "consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending.").

Respondents highlight *Jennings v. Rodriguez*, in which the Supreme Court held that nothing in the text of § 1226(a) supports a requirement that the government bear the burden of proof at a bond determination hearing. 583 U.S. 281, 306 (2018). However, the Supreme Court left open the question of whether the Fifth Amendment's Due Process Clause so requires. *Hernandez-Lara* 10 F.4th at 27 (noting that the *Jennings* Court left open the question of "[w]hether the Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to § 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangerous or a flight risk"); *see also Darko v. Sessions*, 342 F. Supp. 3d 429, 434-35 (S.D.N.Y. 2018). Because Castaneda-Castano argues that the Due Process Clause requires the government to bear the burden of proving that he is a flight risk or danger to the community at such a bond hearing, *Jennings* does not end the Court's inquiry.

Perhaps in recognition of this fact, Respondents urge the Court to follow relevant BIA guidance. However, pursuant to the Supreme Court's decision in *Loper Bright Enter.*

*v. Raimondo*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous." 603 U.S. 400, 412-413 (2024). The Court acknowledges and considers the BIA's interpretation. However, BIA case law must be considered in its proper context. As discussed above, "the BIA lacks the authority to review constitutional challenges." *Sterkaj*, 439 F.3d at 279. To the extent that BIA decisions fail to address the constitutional questions Castaneda-Castano raises in his Petition, they are of limited use. So, this Court will look to other courts for additional guidance on the matter. While this issue has not yet been addressed by the Sixth Circuit, there is persuasive authority from various circuit courts to guide this Court in its analysis.

The Court first turns to *Hernandez-Lara v. Lyons,* a First Circuit Court of Appeals case with facts similar to those in the case at bar. 10 F.4th 19. In *Hernandez-Lara,* the petitioner—a native and citizen of El Salvador—entered the United States in 2013 and was detained in 2018. 10 F.4th at 23. One month after her detention, she was granted a custody redetermination hearing at which the IJ denied bond after placing the burden on the petitioner. *Id*. at 24. The petitioner subsequently filed a petition for writ of habeas corpus, arguing that her Fifth Amendment rights were violated when the IJ placed the burden on her, rather than the government. *Id*. at 25.

In its analysis, the First Circuit determined that the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 893 (1976), was the appropriate standard to use in answering whether the "Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to Section 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangers or a flight risk." *Id*. at 27. Beginning with the first factor, private interest, the court concluded

12

that there was "no question" that the petitioner suffered a substantial deprivation of liberty when she was "incarcerated alongside criminal inmates . . . for over ten months." *Id*. at 28. The Court additionally reasoned that because the "exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy" the first factor weighed heavily in the petitioner's favor. *Id*. at 29.

The second factor, risk of erroneous deprivation, was also found to weigh in the petitioner's favor. *Id*. at 30. The *Hernandez-Lara* Court reasoned that because noncitizens (1) have no right to counsel; (2) experience difficulty in gathering evidence on their behalf; (3) often lack full proficiency in English; (4) are not familiar with immigration law and procedures; and (5) face the difficulty of proving a negative, the "detainee often starts out behind the eight ball in a bond proceeding, and the opportunities for prejudicial error abound." *Id*. at 30-31. As a result, the court concluded that "the odds of error in the weighing of such evidence (or its absence) are likely reduced by placing the burden on the government, as in virtually all other instances of proposed lengthy detention." *Id*. at 31.

Finally, as to the third factor, the government's interest, the First Circuit acknowledged that "prompt execution of removal orders is a legitimate governmental interest." *Id*. at 32 (citation omitted). However, the court clarified that "[w]hat is at stake . . . is not the power of the government to detain noncitizens who may cause harm or flee during removal proceedings, but rather who should bear the burden of proving noncitizens pose a danger or risk of flight." *Id.* The Court considered various factors such as interest in obtaining records, impact on society, and general financial costs. *Id*. at 33. "In short" the court concluded, "given the risk that the current procedures lead to many instances

13

of needless detention, entailing substantial social and financial costs, the public interest in placing the burden of proof on the detainee is uncertain at best, and may well be negative." *Id*. Thus, the First Circuit held that "the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)." *Id*. at 39.

In *Velasco Lopez v. Decker*, the Second Circuit conducted a similar analysis. 978 F.3d 842. In that case, the petitioner received a custody redetermination hearing upon detention. *Id.* However, the petitioner was denied bond after the IJ tasked him with the burden of proving that he was neither a flight risk nor a danger to the community. *Id*. at 847. The petitioner remained in detention for an additional fourteen months before filing a petition for a writ of habeas corpus. *Id*. Similar to the First Circuit, the Second Circuit concluded that the *Mathews* test governed its analysis. *Id*. at 851. After analyzing all three factors, the court reasoned that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id*. at 854. Thus, the Second Circuit "conclude[d] that the district court appropriately addressed the [due process] violation by ordering a new hearing at which the Government was called upon to justify continued detention." *Id*. at 855.

However, the Fourth and Ninth Circuits have disagreed. *See Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022) (holding that the "Due Process Clause [does not] entitle [petitioner] to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence"). In *Miranda*, the Fourth Circuit Court of Appeals also applied the tripartite

14

*Mathews* test but held that placing the burden of proof on a detainee in a bond hearing pursuant to § 1226(a) did not violate the Due Process clause. *Id.* at 361. In reaching this conclusion, the Fourth Circuit noted that "aliens are due less process when facing removal hearings than an ordinary citizen would have." *Id.* Because such aliens are detained pending removal hearings, they experience detention "of a much shorter duration than the indefinite and potentially permanent detention" faced by aliens ordered removed. *Id.* Regarding the second *Mathews* factor, the Fourth Circuit deemed it inappropriate to consider whether other aspects of the bond hearing compounded the risk of erroneous deprivation. *Id.* Additionally, the Fourth Circuit noted that § 1226(a) detainees already "receive the fundamental features of due process—notice and an opportunity to be heard" and that the Supreme Court has repeatedly endorsed the categorical detention of certain classes of individuals. *Id.* at 362-63 (citing *Carlson v. Landon*, 342 U.S. 524, 542-44 (1952) (mandatory detention of aliens suspected to be communists or anarchists); *Demore*, 538 U.S. at 531 (upholding § 1226(c)'s presumption of detention for aliens convicted of certain crimes pending their removal hearings; *Reno v. Flores*, 507 U.S. 292, 315 (1993) (categorical requirement that minor aliens only be released to the care of relatives or approved guardians). Finally, the Fourth Circuit concluded that the government had a "significant interest in detaining aliens pending their removal hearings." *Id.* at 365.

Although the Sixth Circuit has yet to weigh in on the issue, the Court notes that numerous district courts in this Circuit and around the country have concluded that the burden of proving that a § 1226(a) detainee is a danger or flight risk should rest with the government. *See J.Z.S. v. Fields*, No. 26-cv-80-DLB, 2026 WL 1031320, at *12 (E.D. Ky.

15

Apr. 16, 2026) ("Accordingly, the Court concludes that Petitioner's Fifth Amendment Due Process right was violated when the IJ placed the burden on him in his custody redetermination hearing."); *Azalyar v. Raycraft*, No. 1:25-cv-916, 2026 WL 30741, at *5 (S.D. Ohio Jan. 2, 2026) ("Respondents must provide a custody redetermination hearing at which the government bears the burden of justifying [the petitioner's] continued detention"); *Singh v. Raycraft*, No. 1:26-cv-136, 2026 WL 962003, at *8 (S.D. Ohio Apr. 9, 2026) ("Respondents shall bear the burden of persuasion of justifying Petitioner's continued detention and adduce clear and convincing evidence that Petitioner is a danger to the community.") (citations omitted); *Soto-Medina,* 2026 WL 161002, at *9 ("In sum, the *Mathews* factors establish that due process requires the government to bear the burden of demonstrating that [a petitioner detained under § 1226(a)] is a flight risk or danger to the community to deny bond."); *Darko*, 342 F. Supp. 3d. at 435 ("Since *Jennings*, a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified."); *Singh v. Barr*, 400 F. Supp. 3d. 1005, 1018 (S.D. Cal. Aug. 30, 2019) ("The Court agrees with the reasoning of its sister courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving by clear and convincing evidence, that continued detention is justified at § 1226(a) bond redetermination hearing."); *Alvarez Figueroa v. McDonald*, 680 F. Supp. 3d. 18, 26 (D. Mass. 2018) ("[T]he Constitution requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings."); *Riestra v. FNU LNU*, No. 2:26-cv-006360-KG-JHR, 2026 WL 905500, at * 2 (D.N.M. Apr. 2, 2026) ("Petitioner's

16

prolonged detention violates the Fifth Amendment's Due Process Clause, and therefore she is entitled to a bond hearing where the Government bears the burden of proof."); *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87-88 (W.D.N.Y. Oct. 29, 2019) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under § 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [Government]'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).

The Court finds the above case law persuasive. Petitioner's private interest in remaining free from detention is substantial. Indeed, he is currently detained at Campbell County Detention Center in conditions indistinguishable from criminal incarceration. *See Hernandez-Lara*, 10 F.4th at 28. Although he is detained pending adjudication of his removal charges—meaning that his detention has a hypothetical end date—the length of this detention "is impossible to predict" and "can be quite lengthy." *Id.* at 29. Indeed, "[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded . . . even where an individual has prevailed and the Government appeals." *Velasco Lopez*, 978 F.3d at 852. Castaneda-Castano has been detained since December 31, 2025. *Castaneda-Castano*, 2026 WL 622863, at *1. And there is no evidence that his removal charges will be resolved in the near future. A review of his case information indicates that he will not appear for a hearing in his removal case until August 11, 2026. Executive Office for Immigration Review, *EOIR Automated Case Information*, https://acis.eoir.justice.gov/en/caseInformation/ (last visited May 4, 2026).

Concerning the second factor, placing the burden of proof on Castaneda-Castano creates a high risk of erroneous deprivation of his liberty interest. The lone issue before the Court is whether placing the burden of proof on Castaneda-Castano comports with his due process rights. However, this procedural feature cannot be evaluated in a vacuum. As other courts in this Circuit have held, "proving a negative as to danger and risk of flight can be difficult if not impossible in some cases." *Soto-Medina*, 2026 WL 161002, at *8 (citing *Hernandez-Lara*, 10 F.4th at 30); *see also Elkins v. United States*, 364 U.S. 206, 218 (1960) (noting that "as a practical matter it is never easy to prove a negative"). Assigning this task to § 1226(a) detainees—who often experience language barriers, an inability to gather evidence, and other obstacles—exacerbates the risk of erroneous deprivation. *Id.* On the other hand, the government is in a vastly superior position to access pertinent information regarding such detainees' criminal and immigration history. *See Velasco Lopez*, 978 F.3d at 853 (noting that the government has access to "numerous databases[,] . . . to information collected by DHS, DOJ, and the FBI, [and to] information in the hands of state and local authorities"). In light of this disparity placing the burden on the government goes a long way towards ameliorating the risk of erroneous deprivation. *See Mathews*, 424 U.S. at 335 (holding that courts must consider "the probable value, if any, of additional or substitute procedural safeguards").

Finally, the government's interest does not outweigh the risk of erroneous deprivation of Castaneda-Castano's liberty interest. While the Court certainly acknowledges that the government has a legitimate interest in ensuring a noncitizen's appearance at removal proceedings and protecting its citizens, as numerous courts have concluded, shifting the burden imposes minimal additional hardships on the government.

18

Moreover, as some courts have acknowledged, shifting the burden may even support the government's interests.  *See Hernandez-Lara*, 10 F.4th at 33 ("[L]imiting the use of detention to only those noncitizens who are dangerous or a flight risk may save the government, and therefore the public, from expending substantial resources on needless detention."); *Velasco Lopez*, 978 F.3d at 855 ("When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes the community breadwinners, caregivers, siblings and employees. The Government articulates no public interest that any of this serves and we see none.").  At any rate, any additional hardships the government might experience in bearing this burden are outweighed by the reduction in the risk of erroneously depriving Castaneda-Castano of his significant liberty interest.

So, in the absence of authoritative guidance from the Sixth Circuit, this Court follows the "growing chorus of decisions [by] district courts from around the country [holding] that due process requires the government to bear the burden of proving danger or flight risk at a § 1226(a) immigration bond hearing." *Miranda*, 34 F.4th at 378 (Urbanski, J., concurring in part) (citations omitted).  Accordingly, the Court concludes that Castaneda-Castano's Fifth Amendment rights were violated when the IJ required him to prove that he was neither a flight risk nor a danger to the community at his bond hearing. Although Castaneda-Castano requests immediate release, the Court finds that the appropriate remedy is granting his alternative request for a second, constitutionally adequate bond hearing.  Additionally, consistent with its prior orders—as well as other courts who have held that the government must bear the burden of proof—this Court concludes that a clear and convincing standard "provides the appropriate level of

procedural protection." *Velasco Lopez*, 978 F.3d at 856; *see also J.Z.S.*, 2026 WL 1031320, at *12.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)     Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)     Respondents are **ORDERED** to **immediately release** Petitioner or, in the alternative, provide him with a **constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)     Respondent shall file a Status Report with this Court **on or before May 18, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 4th day of May, 2026.

Signed By:

*David L. Bunning*   *DB*

Chief United States District Judge